UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| **ANTHONY K. LAYSSARD** | * | **CIVIL ACTION NO. 06-0352A** |
| Plaintiff | * | |
| | * | |
| **VERSUS** | * | **JUDGE DEE D. DRELL** |
| | * | |
| **UNITED STATES OF AMERICA** | * | |
| **DEPARTMENT OF THE ARMY** | * | |
| Defendant | * | **MAGISTRATE JUDGE JAMES KIRK** |
| | * | **BENCH TRIAL** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *DAUBERT*
MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF RIMKUS
CONSULTING SHOULD PLAINTIFF'S MOTION IN LIMINE
TO EXCLUDE DEFENSE EXPERT BE DENIED**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Anthony Layssard, who moves this Honorable Court to issue an Order excluding or limiting from trial all testimony and reports from Defendant's witnesses, Dr. Baratta, Dr. Smith and/or Rimkus Consulting, Inc. (collectively referred to as "Rimkus") based on the factors expressed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) for the following reasons:

The Plaintiff objects to the Rimkus testimony as being without adequate foundation to be admissible under *Daubert*. The Plaintiff particularly objects to the attempts by Rimkus to give an opinion on medical causation. Both Baratta and Smith can properly be called "doctor" because each has a Ph.D in engineering. However, neither is a doctor of medicine (M.D.). The Rimkus report can have but one purpose, to demonstrate that the injuries sustained by the Plaintiff were not caused by the accident. The jurisprudence compels the Rimkus testimony to be excluded, or at a minimum, limited, as engineers are not qualified to provide "expert" opinions regarding medical causation.

The Plaintiff intends to call Dr. Leglue (Pre-Trial Stipulations, p. 6), a medical doctor, to provide expert testimony that the Plaintiff's injuries were caused by the accident. In an effort to refute this unchallenged medical testimony, the Defendant retained Rimkus. Issues of medical causation, however, are within the scope of medical expertise (M.D. training), such as Dr. Leglue, and not within the scope of engineering expertise. Therefore, Rimkus is not qualified to provide an opinion on medical causation. Additionally, or alternatively, the methodology employed by these witnesses in forming their opinions is inadequate to meet *Daubert* standards.[1]

The emerging consensus in federal and state courts applying the *Daubert* test to **biomechanical engineers is that they may testify, in general terms as to the forces involved in accidents but MAY NOT give opinions as to medical causation**. This consensus is echoed by Timothy P. Harrigan, an expert in Mechanics and Biomechanics, whose report is attached hereto as Exhibit "A".

In *Smelser v. Norfolk Southern Railway Co.*, 105 F.3d 299 (6th Cir. 1996), the Sixth Circuit found that a biomechanical engineer is competent to testify to the forces exerted during an accident but is NOT qualified to testify as to whether these forces caused the injuries complained of by the plaintiff:

> . . . during preliminary questioning, Huston explained that biomechanics apply the principles in mechanics to the facts of a specific accident and provide information about the forces generated in that accident, explain how the body moves in response to those forces, and thus determine what types of injuries would result for the forces generated. Huston admitted that biomechanics are qualified to determine what injury causation forces are in general and can tell how a hypothetical person's body will respond to those forces, but are not qualified to render medical opinions regarding the precise cause of a specific injury. He acknowledged that each individual person has his own tolerance level, and therefore, admitted he could testify only in general terms, i.e., that "X" forces would generally lead to "Y" injuries and "Y" injuries are consistent with those the plaintiff claims to have suffered. . . . **The issue of whether the forces in question caused a specific injury to the plaintiff goes beyond Huston's expertise in biomechanics. . . . Huston**

---

[1] Plaintiff anticipates filing a supplemental detailed memorandum addressing the specific *Daubert* factors upon completion of Dr. Baratta's deposition currently set for November 6, 2007.

FAIRCLOTH, VILAR & ELLIOTT, L.L.C.
ALEXANDRIA, LOUISIANA

**is not a medical doctor who had reviewed Smelser's complete medical history, and his expertise in biomechanics did not qualify him to testify about the cause of Smelser's specific injuries**.

*Smelser*, 105 F.3d at 305, see also, *Dhillon v. Crown Controls Corp.*, 269 F.3d 865 (7th Cir. 2001) (testimony of biomechanical expert was excluded because biomechanical expert did not have special expertise applicable to the issue but merely based his opinion on common sense; since jurors are qualified to apply common sense without expert guidance, the expert's testimony was excluded as not helpful to the jury).

In *Brown v. Old Castle Precast East, Inc.*, 00-CV-2549 (E.D. Pa. 1/15/03), 2003 U.S. Dist. LEXIS 1314, *affirmed*, 76 Fed.Appx. 404 (3rd Cir. 2003), the plaintiff moved for a new trial, arguing that Dr. Nobilini, plaintiff's biomechanical engineer, should have been permitted to testify as to medical causation. The Court denied the motion, noting that plaintiff's treating physicians gave opinions on medical causation and Dr. Nobilini's training and experience did not qualify him to give an opinion which, in any case, would have been duplicitous:

> In this case, the Plaintiffs offered and the Court accepted Dr. Nobilini as a biomechanical engineer expert. Dr. Nobilini has a bachelor's of science in mechanical engineering, a Master's of Science in mechanical engineering, and a Ph.D. in mechanical engineering. Dr. Nobilini's graduate studies were concentrated in the area of biomechanics. Dr. Nobilini testified that 'a biomechanical engineer is someone who takes mechanical engineering principles and applies those principles to understanding how the human body works, and biomechanical engineers get involved in studying the forces that occur within the human body and how those forces affect the tissues of the human body.' (Trial Tr. Day 2, at 9 (Dec. 4, 2001)). **It is undisputed that Dr. Nobilini was not offered or qualified as a physician, and he has no doctor of medicine or doctor of osteopathy degree. Consequently, the Court did not permit Dr. Nobilini to opine as to the medical causation of Gordon Brown's injuries.** The Court found that there is a difference between the mechanical and medical causation, therefore, the Court limited Dr. Nobilini's testimony...**Upon reviewing all the witnesses offered by the plaintiffs, the Court finds no error in limiting Dr. Nobilini's testimony, and plaintiffs suffered no prejudice as Dr. Brasfield and Dr. Zwill both testified on the nature and the extent of Gordon Brown's injuries.**

3

FAIRCLOTH,
VILAR &
ELLIOTT, L.L.C.
ALEXANDRIA, LOUISIANA

*(Emphasis added)* .

In *Wettlaufer v. Mt. Hood Railroad Company*, 95-35016 (9th Cir. 2/6/96), 1996 U.S. App. LEXIS 4776, an unpublished opinion, the Ninth Circuit concluded that the trial court erred in permitting a biomechanical engineer to give testimony on the issue of medical causation without first holding a *Daubert* hearing regarding the expert's qualifications. However, the Court concluded that the error was harmless on the record presented. The Court's comments are as follows:

> **Piziali's qualifications in mechanical and biomechanical engineering and accident reconstruction do not, in themselves, qualify him to testify about what forces could produce thoracic outlet syndrome.** Under *Daubert*, the district court should have inquired whether there is a valid scientific connection between biomechanical engineering and Piziali's testimony on what forces could cause thoracic outlet syndrome.

One thing is clear, Courts reserve opinions on the issue of medical causation for medical doctors. The Rimkus testimony cannot be used to say "this particular accident did not cause this particular injury to this Plaintiff." However, this is exactly what Rimkus attempts to do in its report.

For the aforementioned reasons, Plaintiff's *Daubert* Motion to Exclude or Limit the Testimony of Rimkus Consulting Should his Motion in Limine to Exclude Defense Expert be Denied should be granted (excluding the testimony of Dr. Baratta and Dr. Smith as cumulative and unhelpful) or, in the alternative, only partially granted, permitting Dr. Baratta and Dr. Smith to testify in general terms as to forces generated by the collision but not permitting these gentlemen to express an opinion on medical causation.

Respectfully submitted,

**FAIRCLOTH, VILAR & ELLIOTT, L.L.C.**

By: /s/ Mark F. Vilar
Mark F. Vilar, #25918
Aaron L. Green, #30530
3709 Masonic Drive
Post Office Box 12730
Alexandria, Louisiana 71315-2730
Telephone: (318) 442-9533
Facsimile: (318) 442-9532

**ATTORNEYS FOR PLAINTIFF, ANTHONY K. LAYSSARD**