**Timothy P. Harrigan ScD MBA PE**
**Consultant in Mechanics and Biomechanics**
14 High Street, Franklin, MA 02038
508-541-3949 508-740-8614 (cell)

October 16, 2007

Mr. Mark Vilar
Faircloth, Vilar & Elliott, LLC
3709 Masonic Drive
PO Box 12730
Alexandria, Louisiana 71315-2730

RE: Cause No. 06-0352 Layssard v. United States of America

Dear Mr. Vilar;

    This letter contains my report on the review of the material sent to me regarding this case. Given the short time available for this work, I have not done new research, but have developed opinions regarding the appropriateness of several statements within the report by Rimkus Consulting Group, Inc., on this matter.

    I have reviewed the following material relative to this matter:

- A copy of the complete police report
- The deposition of Anthony Layssard
- The deposition of Patricia Berry
- The deposition of Thurmon Perry
- The deposition of Dr. Gerald J. Leglue, Jr.
- The Expert report of Richard V. Baratta, Ph. D.
- Medical Records for Anthony J. Layssard

    The role of biomechanics in injury analysis is not to develop medical opinions; the only well-supported role is to investigate whether the mechanical factors in an accident are within the ranges that could cause injury. To accomplish this, two pieces of information are necessary: an estimate of the forces or accelerations that occur in an event, and an estimate of the ranges of forces or accelerations that are likely to cause injury, for a the particular injury being investigated. These estimates of force or acceleration can be indirect (change in speed in a collision as an indicator of forces or accelertion, for example) and often some coarse approximations are necessary to arrive at an estimate that has a basis in fact, but the estimates must be based on data, and not conjecture.

    There are several statements in the Rimkus report that do not satisfy this condition; they are not based on documented facts or data from the literature.

1  10/16/2007

Mark Vilar
Faircloth, Vilar & Elliot

A) A conclusion is made that the change in speed to the left on the collision is 3 MPH or less. An estimate such as this would require a calculation based on relative closing speed, vehicle weights, and the relationship between damage and energy loss in the vehicles as they collide. While vehicle weights, inertial properties, and geometric measurements are cited, there is no connection provided between that data and the estimate for change in speed. Given the data in the accident, it seems clear that a useful estimate for a calculation of leftward change in speed is not possible.

B) The connection between a change in lateral speed and the likelihood of injury in this case is complicated by the fact that a significant steering maneuver was underway when the collision occurred. Therefore the lateral change in speed due to the collision would be superimposed on an existing lateral acceleration which would tend to move Mr. Layssard to the right within the vehicle, making him more susceptible to contact with the passenger-side door. This effect is not accounted for in biomechanical data in the literature that relates sideward changes in velocity to injury. Without accounting for this effect, it is not valid to use a lateral change in velocity to infer a likelihood of injury.

C) The Rimkus report states that "The friction of the seat and the seatbelt are sufficient to prevent significant net motion to the front, and would prevent forceful contact between the knees and the knee bolster." This statement is made without an estimate for the frictional coefficient between Mr. Layssard's clothes and the seat, and without an estimate of the frictional coefficient necessary to prevent forward motion relative to the seat.

D) The Rimkus report states "Injuries of the knee or lumbar spine are not expected to occur." This statement is made without an estimate for the forces at work in the accident and without reference to the conditions necessary for injury to the knee or lumbar spine.

E) The Rimkus report states "The mechanisms required to cause an acute meniscal tear involve a forceful torsion while the knee is under load." This is used to argue that the mechanical factors for a knee meniscus injury are not present in this accident. The statement implies that no other loading mechanisms can cause damage to a meniscus (since these "mechanisms" are "required"). This is not proven anywhere in the biomechanical literature, and it is probably impossible to prove that no other mechanisms can damage the knee meniscus.

F) The Rimkus Report states "The presence of facet hypertrophy within two months after the accident support that Mr. Layssard's spinal degeneration predated this accident." This is not a biomechanical opinion, and it presumes that there is data in the medical literature on the amount of time it would take to develop hypertrophy of the facets in a spine. No citations are given as a basis for this assertion.

G) The Rimkus report states "Further, the minimal motions that would have occurred in this accident would not cause new herniations, and exisiting disc degeneration would not be aggravated." This statement is made without any estimate for the "minimal motions" or for the range of motions that would tend

2

10/16/2007

Mark Vilar
Faircloth, Vilar & Elliot

          to cause new herniations or aggravate existing disc degeneration. It is not clear, given the uncertainties in the data for this accident, whether or how an estimate for the size of the "minimal motions" can be made at all. Further, there is no data that I am aware of that speaks to mechanical conditions necessary to aggravate an existing disc degeneration, primarily because the existing disc degeneration in any one patient can take so many possible forms.

H)      The Rimkus Report states "Similarly, the meniscal changes were degenerative in nature and the mechanics required to cause a meniscal tear were not present in this accident." The presence of pre-existing conditions does not speak to the potential for further injury due to a collision, and in fact they can make it more likely that a further injury occurs in a collision. Also, the statement that "the mechanics required to cause a meniscal tear were not present in this accident" is made without an estimate for the mechanical factors in this accident and without an estimate for the "mechanics" necessary to cause an injury to Mr. Layssard's meniscus.

In summary, the Rimkus report makes overly broad statements regarding the biomechanical factors in this case, many of which can not be properly supported by the data available.

      There is only very limited documentation on the condition of Mr. Layssard's spinal discs prior to the accident. These consist of medical reports, and reports by Mr. Layssard and his employer of intermittent back pain, sometimes radiating to his legs. No imaging studies are available to me that would document prior disc condition. However, the symptoms noted by Mr. Layssard indicate that his spinal disc may have been in a damaged state, and discs that are already damaged can be susceptible to further damage, especially in unusual loading conditions. Therefore it is possible for an unusual set of mechanical forces (as in an automobile accident) to increase the damage to Mr. Layssard's spinal disc. This increase in damage can lead to disc bulges or the loss of disc height that would tend to compress nerves around the spinal cord. The forces necessary to cause damage in a potentially damaged disc can be very small, certainly less than the forces applied in this accident.

      The opinions in this report are given to a reasonable degree of biomechanical certainty. They are based on the data supplied to me, and they are subject to change if I am asked to consider further data. These opinions relative to this legal action will be supplemented if further requests are made.

      Pursuant to federal rule for admissibility, my consulting rate is $200 per hour including travel time, and the rate does not change for deposition or testimony. My qualifications and my publications for the past 10 years are summarized in my attached Curriculum Vitae. The cases in which I have given testimony are listed below:

- Manders v. Inamed Corp, US District Court, Western District of Pennsylvania, Patent suit, Deposition testimony for the defendant, 2007

Mark Vilar
Faircloth, Vilar & Elliot

- Trezza v. Pelletier, State Court, Maine, Automotive Injury Case, Deposition testimony for the plaintiff, 2006
- Collassi v. Cybex Federal Court, Boston, MA, Patent Case, Testified in court for the defendant, 2005
- Basco V. Hutson and Liberty Mutual Insurance, Rapides Parish, LA, Automotive Injury Case, Testified in Court for the defendant, 2004.

I have been retained as an expert in some ongoing cases as well, and if they result in testimony I will inform you.

Sincerely,

Timothy P. Harrigan ScD MBA PE