

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **ANTHONY LAYSSARD** | **CIVIL ACTION NO. 06-0352** |
| -vs- | **JUDGE DRELL** |
| **UNITED STATES OF AMERICA** | **MAGISTRATE JUDGE KIRK** |

### RULING AND ORDER

Before the Court is plaintiff Anthony Layssard's Daubert motion (Doc. # 33), seeking to exclude or limit the testimony of Dr. Richard Baratta, defendant United States of America's proposed biomechanical engineering expert witness in a Federal Tort Claims Act case. Because we do not believe the proposed expert testimony will assist the trier of fact under Fed. R. Evid. 702, nor are we convinced that the expert opinion has otherwise satisfied Daubert or Fed. R. Evid. 702's other requirements, we grant the motion.

### BACKGROUND

This case stems from an automobile accident that took place on February 28, 2004. Mr. Layssard was a passenger in a vehicle traveling southbound on Alabama Avenue on Fort Polk, Louisiana, when a vehicle owned by the Department of the Army and operated by an Army employee struck the vehicle in which Mr. Layssard was riding. Mr. Layssard filed an administrative claim

with the Department of the Army on or about February 16, 2005 in the amount of $300,000, which was denied on May 5, 2006. He brought this suit on March 6, 2006 under the Federal Tort Claims Act, 28 U.S.C. § 1346(b).

After the parties filed pretrial stipulations on May 15, 2007 (Doc. # 20) and a revised plan of work on June 7, 2007 (Doc. # 24), defendant United States added as expert witness Dr. Richard Baratta, a bio-mechanical engineer. Mr. Layssard vigorously opposed Dr. Baratta's testimony in a September 26, 2007 motion in limine (Doc. # 25) and in the October 17, 2007 Daubert motion at issue here (Doc. # 33). After a telephone conference on October 24, 2007, we denied the motion in limine and ordered a hearing on the Daubert motion, scheduled for November 16, 2007, on the issues of:

> (1) the plaintiff's Daubert motion (Doc. # 33), specifically on whether and why a bio-mechanical engineer is needed in a low-impact case; and (2) in the event the Daubert motion is denied, whether the plaintiff should be allowed to present his own bio-mechanical engineering expert testimony because of [claimed] lack of clarity at the pretrial conference [regarding the retention of additional experts].

(Doc. # 35, p. 2).

The parties submitted memoranda and exhibits in support of their arguments prior to the scheduled hearing (Docs. # 36, 37, and 38). After reviewing the filings, we found that there was no need for any further evidence to be taken. Thus, we make this determination based on the ample record before us.

2

## LAW

Fed. R. Evid. 702 ("Testimony by Experts") provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Id.

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) sets out some guidelines for the admissibility of expert testimony, including: falsifiability or testability; peer review and publication; the known or potential rate of error; and general acceptance. Id. at 593-94. This list is nonexclusive, however, and ultimately a court must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Id. at 592-93.

## APPLICATION

### I. DR. BARATTA'S CONCLUSIONS AND SCOPE OF EXPERTISE

As Daubert emphasized, the trial court essentially acts as a gatekeeper. We take this responsibility seriously, and in this case that responsibility calls for excluding Dr. Baratta's testimony. Dr. Baratta states his conclusions as follows:

> 1. The contact between the Chevrolet [Layssard vehicle] and the HMMWV [Army vehicle] was a shallow angle contact, in which the Chevrolet experienced a change in speed to the

      left of 3 miles per hour (mph) or less, with minor counterclockwise yawing.

2. The Chevrolet was traveling faster than the HMMWV at the time the vehicles made contact.

3. The motion of the occupants of the Chevrolet would be minor swaying of the trunk to the right. A right-side passenger may have experienced light contact with the right door interior panel or window. Injuries would not be expected to occur.

4. Disc herniations or bulges are not consistent with the mechanics of this accident.

5. A knee meniscus tear, or an aggravation of an existing tear would not be consistent with the mechanics of this accident.

(Report of Dr. Baratta, Plaintiff's Exhibit E, Government Exhibit A).

At the outset, we note that Dr. Baratta is not qualified to issue an opinion as to medical causation. He himself admitted as much in a deposition:

> Q: You're not here to testify about Mr. Layssard's medical condition.
> A: Correct.
> Q: Okay. . . . But as I understand it, you are not a medical doctor.
> A: That is correct.
> Q: Okay. And it's also my understanding that you are not qualified to testify within a reasonable degree of medical certainty to Mr. Layssard's diagnosis of injury.
> A: You are absolutely correct.
> Q: Okay. And you're not qualified to testify within a reasonable degree of medical certainty to causation of Mr. Layssard's injuries.
> A: I'm qualified to testify to the potential of causation of injuries in this accident.
> Q: Okay. In the accident in general.
> A: Yes, sir.

> Q: Okay. But you agree that you're not qualified to testify about medical causation to this particular plaintiff and this particular injury.
> A: I'm qualified in terms of what are the injuries that are consistent with the mechanics of this accident.
> Q: Okay. Consistent with —
> A: Yes, sir.
> Q: Or inconsistent with. You agree with that?
> A: Yes, sir.
> Q: Okay. But not to whether or not this particular plaintiff was injured in this particular location, in this particular accident. You can only state whether the injuries he complained of is consistent with.
> A: Correct

(Deposition of Dr. Baratta taken on November 6, 2007, pp. 42-43, Government Exhibit D).

However, Dr. Baratta also states that he would disagree with a doctor who stated that Mr. Layssard's injuries were caused by the accident at issue here:

> Q: But you can't state with particularity to this particular plaintiff.
> A: Again —
> Q: And as I understand it, because you're not a medical doctor, and that would be within the purview of a medical doctor.
> A: I don't agree with that, either.

(Deposition of Dr. Baratta taken on November 6, 2007, p. 43, Government Exhibit D). Continuing below, we see:

> Q: Okay. Not, if — If either in an injury or an exacerbation, if his medical doctor says that he was injured in this particular accident, would you defer to him with that opinion?
> A: Not necessarily.
> Q: Okay. Even though — Let's assume for — I want you to assume for a second that the medical doctor is referring particularly to this plaintiff in this particular injury. Even with that, and you knowing that you generally talk about the

5

> propensities or the possibilities of injury, you still wouldn't defer to him?
> A:   Correct.
> Q:   Okay. So if you say that this accident is inconsistent, yet a medical doctor says that he was injured in this accident, you would disagree with that.
> A:   Yes.
> Q:   Okay. You would disagree — And you know that the —
> A:   Well, I would — Forgive me. I would disagree with that because in the same, he has information that is missing. He does not know what are the dynamics of the accident.

(Deposition of Dr. Baratta taken on November 6, 2007, p. 47, Government Exhibit D).

In essence, Dr. Baratta says that he is not a medical doctor and cannot offer an opinion as to medical causation, but he refuses to defer to the opinion of a medical doctor because the medical doctor presumably does not have his own engineering knowledge. In this situation, <u>no one</u> could offer an opinion as to medical causation, for it creates a classic chicken-or-egg problem: the bio-mechanical engineer could not offer medical opinions because he is not a doctor, but the doctor could not offer medical opinions because he has no bio-mechanical engineering knowledge. This is a severely flawed assumption. Put simply, medical doctors are qualified—indeed, uniquely qualified—to offer opinions as to medical causation; bio-mechanical engineers are not.

In our view, a bio-mechanical engineer may state the scientific measurements and calculations of the forces involved and state whether or not injuries generally would or would not be expected from such forces. As for the

specific question of whether or not a particular accident caused a particular injury to a particular plaintiff, the bio-mechanical engineer's calculations are simply one factor to consider, another being the testimony of physicians as to medical causation. For these reasons, we would at least preclude Dr. Baratta from testifying as to medical causation and would limit his testimony to the forces involved in the collision and whether or not these would generally lead to injury.

## II. EXCLUSION UNDER RULE 702'S "ASSISTANCE" REQUIREMENT

After appropriately tailoring Dr. Baratta's testimony to the areas within his expertise, the remaining testimony would essentially amount to: "A low-speed (3 mph) collision generally does not lead to injury, at least not the kind complained of here." At a basic level, we do not believe that Dr. Baratta's opinion as to the bio-mechanics of a low-speed collision provides any illumination that common sense does not already provide. We believe it is obvious—without the need for any expert testimony whatsoever—that a low-speed collision is not likely to lead to injury. It is also obvious that there are exceptions to this general proposition, and those exceptions are properly raised by medical doctors in connection with medical causation. Finally, deciding whether there was, in fact, injury, is the province of the trier of fact.

Because we do not believe that the "scientific, technical, or other specialized knowledge" possessed by Dr. Baratta will "assist the trier of fact to understand the evidence or to determine a fact in issue," we exclude his

testimony under Fed. R. Evid. 702. However, even if Dr. Baratta's testimony could clear this hurdle, we have other reservations under Fed. R. Evid. 702 and Daubert.

### III. EXCLUSION UNDER DAUBERT AND RULE 702'S OTHER REQUIREMENTS

Under Fed. R. Evid. 702, testimony by a qualified expert that will assist the trier of fact may be admitted "if (1) the testimony is based upon sufficient facts or date, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Daubert involves similar considerations, and the non-exclusive list of considerations set out above poses similar questions. At heart, all of these considerations seek to determine whether or not the testimony is reliable.

Dr. Baratta's conclusions rest on an estimate of the change in velocity of the vehicles which he arrived at after examining eleven (11) photographs, the military police report, general information on HMMWVs, data on the particular Chevrolet involved in the accident, and repair estimates on the Chevrolet.[1] (Report of Dr. Baratta, Government Exhibit A). In addition, he reviewed deposition transcripts and Mr. Layssard's medical records. (Id.)

Dr. Baratta cannot point to the calculations with which he arrived at his estimate, instead stating, "In this particular event, you have this data, but this is

---

[1] Recall that the HMMWV("Humvee") is the Army vehicle, while Mr. Layssard was traveling in the Chevrolet.

8

built upon probably a hundred and fifty or so accidents that I've reconstructed, some of which do have more information that — than this, and so that's — You pad it and you understand that it will be very well within that range." (Deposition of Dr. Baratta taken on November 9, 2007, p. 10, Government Exhibit C). We are expected to rely solely on Dr. Baratta's assertion that his estimate is accurate, without any documented comparison to similar accidents or other proof.

Dr. Baratta's testimony has one other problematic issue. It seems obvious to us that the weight of the vehicles would play some role in determining the severity of a collision. For example, a dog traveling at three miles per hour will cause considerably less damage than a boulder traveling at three miles per hour, other things being equal, according to the laws of inertia. In this case, Dr. Baratta determined the curb weight of the Chevrolet to be 4,152 pounds, but he listed the weight of the HMMWV as 5,200 to 6,400 pounds, based on the American General website. (Report of Dr. Baratta, Government Exhibit A). This seems to us to be quite a wide range, but there is no discussion of how this range affected his analysis or conclusions, if at all. This is not necessarily fatally defective, but viewed in light of the total lack of calculations elsewhere, it casts further doubt on the objective verifiability of the report.

It seems to us that accepting Dr. Baratta's testimony would involve more faith than science. Were Dr. Baratta's impressive <u>curriculum vitae</u> at issue, it would pass muster; however, it is not his CV that is at issue but his report. An

expert is not a shaman, and his word must be supported. This is the spirit of Daubert and the requirement of Fed. R. Evid. 702, and we are not convinced that Dr. Baratta's testimony is sufficiently reliable. Although we are not convinced that Dr. Baratta's testimony satisfies the reliability requirement of Daubert and Fed. R. Evid. 702, we reiterate that we base our decision on an even more basic fact: Even if Dr. Baratta's testimony is scientifically flawless, it is virtually indistinguishable from common sense for this low-speed collision and thus will not assist the trier of fact in this bench-tried Federal Tort Claims Act case.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that plaintiff's Daubert motion (Doc. # 33) is GRANTED. Dr. Baratta will not be allowed to testify.

SIGNED on this 20th day of November, 2007, at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE